J-A24038-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF H.R.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: WESTMORELAND | : | |
| COUNTY CHILDREN'S BUREAU | : | No. 494 WDA 2020 |

Appeal from the Order Entered March 3, 2020
in the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  24 of 2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.R.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: WESTMORELAND | : | |
| COUNTY CHILDREN'S BUREAU | : | No. 495 WDA 2020 |

Appeal from the Order Entered March 3, 2020
in the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  25 of 2019

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            FILED OCTOBER 26, 2020

In these consolidated appeals, the Westmoreland County Children's

Bureau (the "Agency") appeals from the Orders of the Orphans' Court, which

denied its Petitions to involuntarily terminate the parental rights of L.R.S.

("Mother") to her female children, R.R.F.[1] (born in September 2014) and H.R.D.[2] (born in April 2017) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2) and (b). We affirm.

The Orphans' Court set forth the factual and procedural history of this matter as follows:

> [Mother] is 23 years[]of[]age. She is the child of addicted parents, [and] had chaotic experiences while growing up, often residing in the custody of her grandmother. She attended the Milton Hershey School for several years, but left in the ninth grade. Thereafter, she had no formal schooling, residing in various temporary housing situations, at one point, in a shelter, and was frequently living with her grandmother.
>
> When she was age 15, she met [M.F.], who was then age 22. According to [Mother], she began using alcohol, heroin and ecstasy, at that time. At age 17, she gave birth to [M.F.'s] child, [R.R.F., in September 2014]. The relationship between [M.F.] and [Mother] was volatile, with frequent upheavals of domestic violence. [Mother] obtained sole custody at Case No. 1854 of 2015-D. In that action, [M.F.'s] parents … had intervened. (Their Petition for Partial Custody is still pending.) [M.F.] died of drug toxicity [in November 2017]. At that time, [Mother] was age 18.
>
> By age 20, [Mother] had started a second relationship. This relationship was with [B.D.], the father of [Mother's] second child, [H.R.D], born in [April 2017], when [Mother] was age 21.
>
> Apparently, the living situation in 2017 and 2018 was characterized by bouts of domestic violence and drug activity. The caseworker from the [Agency] did not have concerns for the condition of [M.F.'s] and [Mother's] home, but there had been multiple referrals for suspected drug activity. In May 2018, drug

_____

[1] M.F., R.R.F.'s father, died in November 2017.

[2] On September 5, 2019, B.D., H.R.D.'s father, signed a Petition for Voluntary Relinquishment of Parental Rights. N.T. 9/5/19, at 16.

tests were requested[. B]oth [M.F.] and [Mother] tested positive for methamphetamines, and on June 5, 2018, the [C]hildren were removed from their custody and placed in the kinship care of [M.F.'s] mother and her husband, [C.G., and J.G.].

During 2018, [Mother] accumulated five drug or drug-related criminal charges. On December 19, 2018, she was taken into custody in the courthouse as she was awaiting the commencement of a review of the dependency case. (Just prior to the hearing, [Mother] had tested positive for multiple illegal substances.) [Mother] was taken forthwith to criminal court, where she requested acceptance to drug treatment court. She remained incarcerated and an assessment was ordered.

Margaret Graytok, L.S.W. [(Licensed Social Worker) ("Ms. Graytok"),] of [Southwestern Pennsylvania Human Services Behavioral Health ("S.P.H.S.")], conducted a "level of care assessment" on January 15, 2019. The S.P.H.S. recommendation called for inpatient drug and alcohol treatment followed by participation in a halfway house. [Mother] remained incarcerated and appeared in Drug Treatment Court on February 19, 2019; at that time, her request for treatment was accepted. Thereafter, she was given [N]otice of termination proceedings.[FN1]

On March 11, 2019, pursuant to the recommendation of S.P.H.S. and the Adult Probation Office, [Mother] was released from the county jail and entered a residential treatment program for women and children at the Gaudenzia House of Healing in Erie. Upon arrival at Gaudenzia, in March 2019, [Mother] entered a request for visits with the [Children]. According to [Mother], she was told visits would be restricted to a half-hour every other week, because the permanency goal had been changed from reunification to adoption.[FN2]

The initial proceeding of [Mother's] termination proceeding was scheduled for April 11, 2019, while [Mother] was in residence at Gaudenzia. ([Mother] contested termination and the initial evidentiary hearing was re-scheduled for August 8, 2019, but then continued until September 5, 2019.) On June 10, 2019, [Mother] successfully completed residential treatment and entered Community House, a halfway house, also located in Erie.

[Mother] successfully completed the program at ... on September 30, 2019, and is compliant with her aftercare programs.

According to the testimony and the drug testing evidence, [Mother] has not used any illegal substances since December 19, 2018. She is now living with her grandmother.

_____

[FN1] The Petition to Terminate Parental Rights was not served on [Mother] until March 7, 2019, according to the [A]ffidavit of [S]ervice.

[FN2] Such information would have been incorrect. The Juvenile Court Hearing Officer's Report of June 12, 2019, notes that the placement goal was still "return to parent" and adoption only the concurrent goal. The limitation of visits would not appear justified by the judicially-ordered permanency plan at that time.

Orphans' Court Opinion, 3/3/20, at 2-3 (footnotes in original).[3]

On February 25, 2019, the Agency filed Petitions for the involuntary termination of parental rights of Mother to the Children, and for the involuntary termination of parental rights of B.D. to H.R.D. The Orphans'

_____

[3] The Orphans' Court Opinion appeared to have at least two apparent typographical errors regarding Mother and B.D.'s living situation during 2017 and 2018, and mistakenly refers to B.D. as M.F., who was deceased at that time.

Court appointed Kyle Baxter, Esquire, as the legal counsel and guardian ad litem ("GAL") for the Children.[4]

On September 5, 2019, October 23, 2019, and December 12, 2019, the Orphans' Court held evidentiary hearings on the Petitions. At the hearing on September 5, 2019, the Agency presented the testimony of Jean DeFilippis, the owner of ARCpoint Lab; Ms. Graytok, an employee of S.P.H.S.; Alyssa Anderson ("Ms. Anderson"), of King and Associates; and Amy Mayer ("Ms. Mayer"), caseworker for the Agency. On October 23, 2019, the Agency presented the testimony of Neil Rosenblum, Ph.D. ("Dr. Rosenblum"), the court-appointed psychologist; Megan Schweppe of King and Associates; and again presented the testimony of Ms. Anderson and Ms. Mayer. On December

_____

[4] The Orphans' Court appointed only one counsel to serve as both legal interest counsel and GAL for the Children, and the GAL perceived no conflict between the best interests of the Children and their legal interests. At the time of the hearings, R.R.F. was almost five years old and H.R.D. was two years old. N.T., 9/5/19, at 23. See In re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017) (plurality), (holding that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome); see also In re T.S., 192 A.3d 1080 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome). We do not comment on the quality of the legal counsel's representation of the Children in this matter. See In re: Adoption of K.M.G., 219 A.3d 662, 669 (Pa. Super. 2019) (en banc) limited appeal granted, 221 A.3d 649 (Pa. 2019) (holding that this Court has authority only to raise sua sponte the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation).

12, 2019, the Agency presented the testimony of Stacy Miller, an employee at KinderCare and R.R.F.'s kindergarten teacher; and Stephanie Dreggors, an employee for ARCpoint Labs of Pittsburgh North. The Agency again presented the testimony of Ms. Graytok, and offered Ms. Mayer for re-cross-examination. Mother testified on her own behalf.

On March 3, 2020, the Orphans' Court entered Orders as to each of the Children denying the Agency's Petitions, and concluding that the Agency did not meet its burden of proving that Mother's parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (b).

Thereafter, on March 13, 2020, the Agency filed Notices of Appeal and Concise Statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5]

On appeal, the Agency raises three issues for our review:

I.     [Whether t]he [Orphans'] Court erred as a matter of law and/or abuse of discretion in denying Agency's [P]etition to involuntarily terminate parents' parental rights pursuant to 23 Pa.C.S.A. []§ 2511(a)(1) when Agency proved by clear and convincing evidence that grounds for termination existed[?]

II.    [Whether t]he [Orphans'] Court erred as a matter of law and/or abuse of discretion in denying Agency's [P]etition to involuntarily terminate parents' parental rights pursuant to 23 Pa.C.S.A. []§ 2511(a)(2) when Agency proved by clear and convincing evidence that grounds for termination existed[?]

_____

[5] On June 6, 2020, this Court, sua sponte, consolidated the appeals regarding H.R.D. and R.R.F. For ease of disposition, we have addressed the appeals in a single memorandum, as did the Orphans' Court.

III.     [Whether t]he [Orphans'] Court erred as a matter of law and/or abuse of discretion in denying Agency's [P]etition to involuntarily terminate parents' parental rights pursuant to 23 Pa.C.S.A. § 2511(b) when Agency proved by clear and convincing evidence that termination would best serve the needs and welfare of the [Children?]

Agency's Brief at 4.

The Agency contends that the Orphans' Court abused its discretion when it denied the Agency's Petitions. Id. at 9. The Agency argues that it proved by clear and convincing evidence that Mother failed to remedy her incapacity to parent, which caused the Children to be removed from the parents' care. Id. at 9-13.

Section 2511 of the Adoption Act provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), and (b).

In reviewing an appeal from the denial of a petition to terminate parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; In re R.I.S., 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel–Bassett v. Kia Motors America, Inc., 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., 9 A.3d at 1190. Therefore, even where the facts could support an opposite result,

as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

In re I.E.P., 87 A.3d 340, 343-44 (Pa. Super. 2014) (quoting In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)). "Satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." Z.S.W., 946 A.2d 726, 729 (Pa. Super. 2008) (brackets omitted, emphasis in original).

In the present case, the Agency first contends that the Orphans' Court erred when it failed to terminate Mother's parental rights pursuant to Section 2511(a)(1). Agency's Brief at 7. The Agency argues that Mother "in essence abandoned her Children for a period of eight months prior to the filing of the termination [P]etition." Id.

Section 2511(a)(1) provides that the Orphans' Court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

With respect to subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

In re Adoption of Charles E.D.M., 708 A.2d 88, 92 (Pa. 1988). Further, this Court has stated:

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

In re B.,N.M., 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. In re B.L.L., 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of

the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. In re K.Z.S., 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of [her] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." Id. (citations omitted).

This Court has repeatedly defined "parental duties," in general, as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

In re B., N.M., 856 A.2d at 855 (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." Id. (citation omitted). "A parent must utilize all

available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." Id. (citation omitted).

Our Supreme Court has instructed, however, that this Court should defer to the trial court where a "close call" was made. See R.J.T., 9 A.3d at 1190. Here, the Orphans' Court concluded that the Agency did not meet its burden of proving that grounds for termination existed pursuant to Section 2511(a)(1) on the basis of Mother's demonstrating a settled purpose to relinquish her parental rights to the Children, or a failure to perform her parental duties. The Orphans' Court explained that

> [t]he removal of the [C]hildren from [Mother's] custody on June 5, 2018, was based on [Mother's] positive drug test (for methamphetamines), prior reports to the agency, and the need for the [C]hildren to be in a safe environment, as the [C]hildren were then only one and three years old.
>
> The evidence is clear that during 2018, [Mother] was engaged in substance abuse and drug-related criminal activity and domestic violence. Moreover, she failed to comply with court-ordered treatment services.
>
> The findings of the December 19, 2018 hearing officer[,] that [Mother] had made no progress[,] would seem correct. However, on this date[,] the situation took a different course. [Mother] was arrested just before commencement of the dependency review hearing and taken to criminal court. There she requested admission to drug treatment court.
>
> The record is clear that, since that date, December 19, 2018, [Mother] has been abstinent of all illegal substances and has demonstrated behavior unlike that which led to the removal of her [Children]. The events since December 19, 2018, cause hesitation as to reaching a conclusion that [Mother's] rights should be terminated.

## [] MOTHER'S CONDUCT AFTER DECEMBER 19, 2018

[Mother] immediately sought the intervention of drug treatment court. She was accepted. She thereafter complied with her drug court requirements. Her testimony as to her recovery and progress was convincing.

Ms. Graytok[,] of S.P.H.S.[,] testified that [Mother] successfully completed the Gaudenzia House of Healing, and at the Community House, [Mother] had been made "chief" of the house, meaning that community decisions were made through her. Ms. Graytok testified that [Mother] is compliant with aftercare services under the drug treatment court program – intensive outpatient treatment, NA/AA [Narcotics Anonymous/Alcoholics Anonymous], drug testing, case management requests, etc.

[Mother] outlines improvements to her mental health: "I have learned a lot of ways to cope … I am on medications … I use the skills I have learned to deal with [anxieties] … how to identify an abusive relationship … I am sober. I am an honest person today. I think I deal with things a lot better now. I am learning to cope with everything, which is something I was never good at before…." (T. 130-132)

[Mother] was credible under (what I would call) a blistering cross[-]examination by the [GAL] as to non-compliance with agency requirements during 2018.[FN3] She openly, candidly acknowledged her failure to engage in the services offered (and required) by the [A]gency during 2018.

[Mother's] self-assessment of her condition post[-]drug court is entitled to weight and consideration, given its candor.

### 23 Pa.C.S.[A.] § 2511(a)(1)

It is important to note that Mother's directional change of course began December 19, 2018, well before she was given [N]otice of termination proceedings on March 7, 2019. This fact is not acknowledged by the [A]gency. The thrust of the [A]gency's case is to request consideration of the time period from June 5, 2018, the date of removal, until December 19, 2018, a period of six months and two weeks. The cases, however, counsel the trial court to not simply mechanically apply the six-month statutory [sic] of § 2511(a)(1), but to consider the entire background of the case, and the totality of the circumstances – including all explanations offered by the parent. Only then, and upon finding the evidence to be clear and convincing, should termination be ordered.

The narrative of this case demonstrates facts and circumstances of deprivation in [Mother's] own background that would render unjust any mechanical application of § 2511(a)(1); rather, [Mother's] 2018 conduct must be viewed in light of her experiences from age 15 onward. Her addictions beginning at age 15, which had not been remedied by December 19, 2018, were obviously the causes of many of her failures and wrongdoing, but, at the very same time, serve to refute any basis for concluding that she possessed a "settled purpose" of relinquishing or abandoning her children.

_____

[FN3] I believe I erred by simply accepting the request from the [A]gency that the [GAL] also serve as counsel for the [Children]. The [C]hildren are only ages five and two and have no special need for their own counsel. The [GAL] became a vigorous advocate for the outcome of termination (T. 158), and served as virtual co-counsel for the [A]gency.

Orphan's Court Opinion, 3/3/20, at 5-7 (footnote in original).[6]

Mindful of our standard and scope of review, we cannot conclude that

the Orphans' Court abused its discretion when it determined that the Agency

_____

[6] We will not delve into the quality of the representation by the GAL/legal interests counsel. See Adoption of K.M.G., 219 A.3d at 669.

- 14 -

had failed to present clear and convincing evidence to terminate Mother's parental rights under Section 2511(a)(1). Our review discloses that the Orphans' Court considered the totality of the circumstances and concluded that Mother did not demonstrate a settled purpose of relinquishing her parental rights, and that she has exercised reasonable firmness in overcoming obstacles in her path while the Children were in foster care and she was not performing her parental duties. The competent evidence in the record supports the Orphans' Court's findings regarding the credibility of the witnesses and the weight of the evidence. Thus, we will not reweigh the evidence or make different credibility determinations. In re Adoption of S.P., 47 A.3d at 826-27. Accordingly, we find no abuse of discretion in the Orphans' Court's denial of the Agency's Petition pursuant to Section 2511(a)(1).

Next, the Agency avers that the Orphans' Court erred and abused its discretion when it denied the Agency's Petition to involuntarily terminate Mother's parental rights pursuant to Section 2511(a)(2). More specifically, the Agency contends that Mother was "non-compliant with services offered to her by the Agency[,] and that she made no progress towards reunification." Agency's Brief at 17.

With respect to section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity,

abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002).

Here, the Orphans' Court determined that the Agency did not meet its burden that grounds for termination existed pursuant to Section 2511(a)(2). The Orphans' Court opined as follows:

<u>23 Pa.C.S.[A.] § 2511(a)(2)</u>

Neither can one conclude[,] on a "clear and convincing" standard[,] that [Mother] "cannot or will not remedy the incapacities that she demonstrated from early 2018 until December 2018. Her compliance -- and success -- in [d]rug [t]reatment [c]ourt must be accorded weight. That objective measure, taken with [Mother's] candid testimony, provides a clear evidentiary basis for distinguishing her 2018 conduct from that after entry into rehabilitative services.

Orphans' Court Opinion, 3/3/20, at 7 (emphasis added).

Upon review, we discern no abuse of discretion by the Orphans' Court in concluding that the Agency failed to present clear and convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(2). Despite Mother's lack of compliance with the services offered by the Agency, Ms. Mayer

conceded that Mother has been fully compliant with drug treatment court. N.T., 12/12/19, at 15, 19. Moreover, Mother has continually tested negative for all illegal substances since December 19, 2018.

The Orphans' Court based its decision on the testimony presented, and the competent evidence of record supports its factual findings. Again, we will not reweigh the evidence or make different credibility determinations. In re Adoption of S.P., 47 A.3d at 826-27.

Finally, the Agency contends that the Orphans' Court erred and abused its discretion when it denied the Agency's Petition to involuntarily terminate Mother's rights pursuant to Section 2511(b). Agency's Brief at 26. The Agency argues that termination of Mother's parental rights would best serve the needs and welfare of the Children. Id.

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). See In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super. 2008) (en banc).

As to Section 2511(b), our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be

- 17 -

paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

In re T.S.M., 71 A.3d at 267.

Generally, this Court has stated that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. In re L.M., 923 A.2d 505, 512 (Pa. Super. 2007). We have stated that a "child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'" In re Z.P., 994 A.2d 1108, 1125 (Pa. Super. 2010).

In the present case, the Orphans' Court denied the Agency's Petitions to involuntarily terminate Mother's parental rights pursuant to Section 2511(b), and explained, in part as follows:

The [A]gency sets forth the § 2511(b) allegations, in summary, as follows:

[Mother's] failure to gain control over her life circumstances has resulted in a belief that it is no longer in the [Children's] best interest to be returned to [Mother]; [Mother] has been non-compliant with services offered by the [A]gency, and has made no progress during "the past five months" toward reunification. [Mother] appears to lack the innate ability to provide care and protection for her [Children] and has made no efforts to improve her personal, legal or family situations.

Section 2511(b) requires consideration of the needs and welfare of the [Children]. The court is not to terminate a parent's rights on the basis of environmental factors that are beyond the control of the parent. Many terminations, however, have been based on a parent's unaddressed addiction or mental health issues, as these

are not "environmental", per se. However, §[ ]2511(b) is intended to require an analysis of the [Children's] best interests, as to both tangible and intangible considerations.

Mother[,] herein[,] passionately expresses her own feelings of love and affection for the [C]hildren, and her desire to be "their mom[."] Obviously, a parent's own feelings cannot alone be a basis for denying termination. The parent must also demonstrate some objective evidence in support of her cause, for example, the ability to actually care for and raise her children. These issues have been raised by the [Agency] – housing, a job, a GED, transportation, and [Mother's] actual capacity to raise and nurture the [Children]. All of these issues are on [Mother's] plate, yet she is only midway through the [d]rug [t]reatment [c]ourt recovery/diversionary program. Though [Mother's] circumstances are difficult – and in the end, she may not succeed – she currently has stable housing with her grandmother, is succeeding with all of her recovery programs, has begun her job-search efforts[,] and is to begin her GED efforts in the near future. Clearly, her efforts must be accorded significant weight at this juncture.

[Mother] has not completed the [Agency's] requirements, but has obtained what are essentially the same services through her drug court program – therapy, life skills, [and] recovery services. Non-compliance issues pending in the Juvenile Court are not significant, as they can all be addressed in a prompt manner. If [Mother] lacks the "capacity" to position herself for return of her [C]hildren, that will become evident. At this time, it cannot be said she lacks the capacity. The concerns described by Dr. Rosenblum reflect the issues facing this "relatively young 23-year-old" [M]other, and his written opinion that[] [Mother's] progress "will require considerable effort … over an extended period of time", identifies the hurdles. Clearly, success in the drug court program does not equate to the success needed for return of the [C]hildren, and an elongated, uneven series of successes followed by failure would demonstrate correctness of the [Agency's] argument that [Mother] simply does not have the capacity to parent the [C]hildren. Even so, termination at this time would be precipitous and not on the basis of clear and convincing evidence.

To deprive [Mother] of an opportunity to demonstrate her parenting competencies[,] while in a clean and sober state[,] is to ignore all evidence of her improvement that occurred after she

was no longer ingesting near-daily doses of methamphetamines. Moreover, failing to consider post-December 19, 2018[,] evidence would raise questions of whether [Mother] was accorded due process. These facts must be kept in mind:

1. The permanency goal set forth in the Order of December 19, 2018, was return to the [Mother], yet her visits were limited and a termination [P]etition was filed.

2. [Mother's] efforts of sobriety and resumption of custody literally began on December 19, 2018, yet on March 7, 2019, she was served with the [P]etition. (A § 2511(b) argument that [Mother's] remedial efforts may not be considered would not be supported by the facts.)

3. [Mother's] visitation schedule was set[,] at the [Agency's] discretion[,] at the barest minimum. The schedule was, as the [Agency] admitted, in anticipation of termination proceedings. The supervised visits of one[-]half hour every other week was hardly sufficient to support a reunification goal. (Note: Petitioner's Exhibit 5.)

4. There is no basis for the court to conclude that termination would not cause the [C]hildren to lose an important bond, particularly as to [R.R.F.]. The observation memorandum of [Ms.] Anderson, Exhibit 5, reflects the appearance of a substantial bond. More frequent visits would have provided clarity. [Mother] must be entitled to an opportunity to demonstrate bonding and attachment contentions.

All this having been said, a careful reflection of Dr. Rosenblum's testimony identifies the issues yet to be addressed by [Mother] – particularly as to her mental health and competencies. But her first step was sobriety/abstinence, which she has taken. Perhaps, in several months, a pure "best interests" analysis may lead to the conclusion that the [C]hildren's permanency interests require adoption by the grandmother. At least by then[,] [Mother's] competencies, or lack thereof, would be fairly assessed, there would have been an opportunity for "family roundtables" types of

discussions and the permanency interests even agreed to by all concerned, or, at least, there would be better clarity of the issues involved.

Orphans' Court Opinion, 3/3/20, at 7-9.

Our review of the record reveals that the Orphans' Court's determination is supported by the competent evidence of record. Dr. Rosenblum conceded that there is a great deal of concern surrounding Mother's history of addiction, but testified that Mother's "strengths are an increased level of motivation and increased level of commitment to recovery." N.T., 10/23/19, at 10. The Orphans' Court weighed heavily Mother's willingness to accept responsibility for her failure to provide suitable care for the Children for a number of years, and Dr. Rosenblum credited Mother for her ability to be "honest, more honest than many who … complete these evaluations for court-related purposes. She openly acknowledged her difficulty with self-esteem with a pattern of very severely impulsive behaviors, a pattern of self-defeating behaviors, conflicts with others." Id. at 18. Ms. Anderson, who provides therapy for R.R.F., and supervises visits between Mother and the Children, testified that when the Children greet their mother, "[t]hey appear very excited to see her. They run to her and give her a big hug, jump on her." N.T., 9/5/19, at 106. Ms. Anderson described that during visitation, "[t]hey play. We have a kitchen playset that [R.R.F.] loves, so they'll play with that, and color sometimes. More recently, they've been spending a lot [of] time on the floor, tickling each

other and playing on the floor." Id. Moreover, Ms. Anderson stated that Mother does not do anything that displeases the Children. Id.

We conclude that the Orphans' Court's findings are supported by competent evidence in the certified record, and that the court did not commit an error of law or abuse of discretion in its determination that involuntary termination of Mother's parental rights is not in the Children's best interests pursuant to 2511(b).

As discussed supra, and our Supreme Court has stated, appellate courts—unlike trial courts— are not in a position to make the close calls based on fact-specific determinations. In re R.J.T., 9 A.3d at 1190. Not only do trial judges observe the parties during the termination hearing, but they usually preside over the dependency hearings with the same parties and have a longitudinal understanding of the case, and the best interests of the children involved. Id. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court, and impose its own credibility determinations and judgment, so long as the factual findings are supported by the record and the trial court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of S.P., 47 A.3d at 826-27.

After review of the certified record, we conclude that the record supports the Orphans' Court's factual findings, and the court's conclusions are not the

result of an error of law or an abuse of discretion. Our review discloses competent, clear and convincing evidence in the record to support the Orphans' Court's denial of the Petitions to terminate Mother's parental rights to the Children. In re Adoption of S.P., 47 A.3d at 826-27; In re: T.S.M., 71 A.3d at 267.

Accordingly, we affirm the Orphans' Court's Orders.

Application for post-submission communication granted. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2020